1  Celia McGuinness (SBN 159420)
   Deborah Gettleman (SBN 267309)
2  McGUINNESS LAW GROUP, PC
   155 Grand Avenue, Suite 900
3  Oakland, CA 94612
   Telephone: (510) 439-2950
4  Facsimile: (510) 439-2951
   Email: cmcguinness@mcguinness-legal.com
5         dgettleman@mcguinness-legal.com

7  Attorneys for Plaintiff Twinette Richardson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINETTE RICHARDSON<br><br>　　　Plaintiff,<br><br>　　v.<br><br>RELATED MANAGEMENT COMPANY, L.P.; THE RELATED COMPANIES OF CALIFORNIA, LLC; OAKLAND INTERNATIONAL HOUSING PARTNERS, L.P., and ACTS COMMUNITY DEVELOPMENT,<br><br>　　　Defendants. | CASE NO.<br><br><u>Civil Rights</u><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. Violation of the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*<br><br>2. Violation of Section 504 of the Rehabilitation Act<br><br>3. Violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12955 *et seq.*<br><br>4. Violation of the Unruh Civil Rights Act, Cal. Civil Code §51 *et seq.*<br><br>5. Violation of the Disabled Persons Act, Cal. Civil Code § 54 *et seq.*<br><br>6. Violation of Oakland Municipal Elevator Ordinance<br><br>7. Breach of the Warranty of Habitability<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## INTRODUCTION

1. Twinette Richardson is a 68-year-old woman who relies on a wheelchair for mobility. She moved into the Acts Cyrene Apartments, owned and operated by Defendants, in December 2017, immediately after it opened for first occupancy. The Acts Cyrene is a low-income apartment building in Oakland, California.

2. Since June 2024, Plaintiff has made four reasonable accommodation requests based on her disability: To repair the elevator, which has a history of breaking down, including an 8-week outage in September and October; to move her to a ground-floor unit, to minimize the impact of outages; to repair the building intercom, so she can let people into the building remotely, including medical treaters and medical supply deliveries; and for a gate fob, so that she can be picked up and dropped off safely near the building instead of on the busy street where the apartments are located. As of this filing, Defendants have not granted any of her reasonable accommodation requests.

3. Ms. Richardson brings this action to end Defendants' harmful and unlawful disability discrimination. She seeks an order that Defendants cease all discriminatory behavior, grant her reasonable accommodation requests, and implement lawful fair housing policies and practices to ensure that neither she nor any other tenant suffers similar discrimination in the future. She also seeks damages for her injuries and reimbursement of her reasonable attorney fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 for violations of federal law. This Court has jurisdiction over the pendent state law claims brought under California law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this District and Plaintiff's causes of action arose in this District.

///

///

# THE PROPERTY

6. Acts Cyrene Apartments is a 59-unit, 3-story, federally-funded affordable apartment complex (also referred to herein as "the subject property"). It is located at 9400 International Boulevard in Oakland, California. It opened for first occupancy in 2017.

# PARTIES

7. Defendant Related Management Company, L.P. ("Related Management") is a New York limited partnership. Based on a review of publicly-available records, Plaintiff is informed and believes that Related Management is the management company contracted by other Defendants to manage Acts Cyrene Apartments. Defendant Related Management is one of the largest apartment managers in the United States. Defendant Related Management's assets under management are valued at over $60 billion, including approximately 60,000 affordable and workforce housing units in the United States. Defendant Related Management manages over 150 apartment complexes subsidized under project-based subsidy programs administered by the Unites States Department of Housing and Urban Development (referred to herein as "HUD").

8. Defendant Oakland International Housing Partners, L.P., ("OIH") is a California limited partnership. Based on a review of publicly-available records, Plaintiff is informed and believes and therefore alleges that OIH is a shell corporation. It has two general partners: Related/Oakland International Development Co., LLC ("Related Oakland") and Acts Community Development ("ACD").

9. Defendant, The Related Companies of California, LLC ("Related California), is a California corporation solely managed by The Nicholas Company, Inc., a Delaware Corporation doing business in the State of California. Related California is designated as the principle executive office for The Nicholas Company. Based on a review of publicly-available records, including its website, Plaintiff is informed and believes and therefore alleges that Defendant Related California has operational control of Related/Oakland. Related/Oakland has no members other than The Nicholas Company. The President of the Nicholas Company is William A. Witte, who is the Chairman and CEO of Defendant Related California. Plaintiff is informed and believes

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                     3

that Related/Oakland is a subsidiary of The Nicholas Company c/o Defendant Related California. Plaintiff is informed and believes that Defendant Related California acts as the administrative general partner of Defendant OIH, via its control of Related/Oakland International Development Co., LLC. Therefore, Related California, through its control of these subsidiary and/or shell corporations, exercises ownership and operational control of OIH and of Acts Cyrene apartments.

10. Defendant Related California is one of the largest developers of affordable housing in California. It currently owns and manages (via Related Management Company, L.P.) more than 13,000 units, including the subject property. https://www.relatedcalifornia.com/our-company/properties/acts-cyrene-apartments (last accessed December 3, 2024).

11. Defendant ACD is a California nonprofit public benefit corporation. Based on a review of publicly-available records, Plaintiff is informed and believes and therefore alleges that ACD is the managing general partner of Defendant OIH. Plaintiff is informed and believes that ACD exercises ownership and operational control of OIH and of Acts Cyrene apartments.

12. Defendants Related Management, OIH, Related California and ACD are referred to collectively herein as "Defendants."

13. On information and belief, in undertaking the conduct alleged herein, Defendants were, at all times relevant, acting as the agent, employee or representative of each other. On information and belief, the conduct of each Defendant alleged herein was within the course and scope of its actual or apparent authority pursuant to such agency, or the conduct of each Defendant as agent was subsequently ratified and adopted by the other Defendant as principal.

14. Based upon a review of publicly-available records, Plaintiff is informed and believes and therefore alleges that at all times relevant to this Complaint, Defendant Related Management Company was acting within the scope of its contract and agency with Defendants Related California, OIH and ACD.

15. Defendants are entities that acquire, own, and/or operate affordable apartment communities, including the subject property. As professional housing builders, developers and managers, Defendants are, or should be, well aware of their responsibilities not to discriminate in the provision of housing services at Acts Cyrene apartments. Yet, by their actions and inactions

Defendants have rendered the subject property inaccessible for Plaintiff.

16. At all times herein relevant, Twinette Richardson has been a person with a "handicap" within the meaning of 42 U.S.C. § 3602 and a person with a disability within the meaning of 29 U.S.C. § 705(9)(B), California Government Code § 12926, California Civil Code § 51 and California Civil Code § 54.1. Her right leg and toes on her left foot have been amputated. Therefore, she has a medical condition that substantially limits major life activities, including walking, climbing and standing. She cannot perform these activities in the same manner and duration as a person without a disability. She uses a wheelchair for mobility.

## THE DISCRIMINATORY BEHAVIOR

### The Malfunctioning Elevator, and Defendants' Safety Violations

17. Based on the records of the California Department of Occupational Safety and Health ("Cal-OSHA"), Plaintiff is informed and believes and thereon alleges that Cal-OSHA took the elevator at the subject property out of service on May 7, 2024, because of Defendants' repeated violations of California elevator safety regulations. The violations reach as far back as September 2023.

18. Plaintiff started noticing the elevator malfunctioning in April 2024. It was often out of order for hours or even days. Defendants did not provide Plaintiff notice it was out of order, except for periodically posting an "out of order" sign on the elevator. Plaintiff had no way to know the elevator was inoperable until she wheeled down the hall to use it.

### Plaintiff was harmed by the repeated outages so she made Requests for Reasonable Accommodations

19. Plaintiff lives on the third floor of the Acts Cyrene apartments. The laundry room is on the second floor and the mail room is on the first floor. Because she relies on a wheelchair for mobility and cannot climb stairs, the only way Plaintiff has access to her unit, common use amenities, and the outside world, is by using the elevator.

20. After the elevator began breaking down, Plaintiff contacted management and asked them to repair the elevator so she could get in and out of her home. Management did not

do so and the elevator continued to break down.

21. Plaintiff repeatedly missed appointments or was prevented from socializing as a result of the elevator being out. For instance, she missed medical appointments, and she missed her granddaughter's graduation ceremony. In order not to miss the family party afterward, her grandchildren had to carry her down the stairs and back up again. Her grandson had to carry her down the stairs again for her granddaughter's going away to college party in August. These were uncomfortable and humiliating experiences for her.

22. In early June 2024, Plaintiff went to the office at the subject property and submitted a written reasonable accommodation request for a ground floor unit because of the malfunctioning elevator. Defendants accepted the request and said they would process it. However, as of the date of this filing, Defendants have not followed up with Plaintiff to tell her that it was granted or denied, or to request additional information.

23. The property managers know that Plaintiff is a person with a disability. Her disability is obvious, as she uses a wheelchair at all times.

24. In early September 2024, the elevator stopped working completely. It was out of service for eight weeks. Plaintiff is informed and believes it was taken out of service by Cal-OSHA for safety violations, and Defendants were ordered not to operate it until it was repaired and inspected.

25. During that time, Ms. Richardson had to go to the emergency room. The elevator being broken, the EMTs had to strap her into a hospital wheelchair and carry it down the stairs, and back up the same way when she was discharged from the hospital. This was uncomfortable, humiliating and frightening for her.

26. Because Ms. Richardson is on the third floor, she was, and remains, unable to wash her clothing when the elevator is out of order. She could not, and cannot, reach the mailroom to get her mail. She could not, and cannot, go grocery shopping or perform other tasks of independent living that nondisabled people can.

27. Plaintiff called the management office nearly every other day during the eight-week outage but rarely reached a live person. When she did reach someone, she asked about the

status of the elevator outage and emphasized her request that it be repaired as an accommodation of her disability. Defendants would reply that they were waiting on a part and "it was out of their hands."

Plaintiff's Request to Repair the Intercom

28. In June 2024, the intercom at the entrance to the subject property stopped working. As of the date of this Complaint, it is still broken. Ms. Richardson relies on this intercom to remotely open the exterior doors for her family, caregivers, medical staff and delivery persons. Since June of 2024, they can only gain entry if Ms. Richardson is able to get an on-site manager on the phone to open the exterior door, which is rare, or if another tenant walks by and is willing to trust that they are there for their stated purpose.

29. Ms. Richardson has requested that Defendants repair the intercom as an accommodation of her disability, but they have not.

30. Because the intercom is broken, Ms. Richardson is unable to provide access to anyone remotely. When the elevator is operable and these visitors call her, she has to wheel down the hallway in her manual wheelchair, take the elevator and let them in personally. This is exhausting for Ms. Richardson.

31. When the elevator is broken, Ms. Richardson calls the office to see if she can reach a person who will agree to go open the front door. If she is not successful, her care takers, delivery persons and family members have to wait until another tenant walks by and hope to be allowed in.

32. On one occasion, when the elevator was out of service, Plaintiff's daughter had to wait over an hour to get into the building. Family and caretakers regularly have to wait between 15-30 minutes to be let in.

33. On several occasions, her doctor has had to leave and miss their scheduled appointment because they could not wait any longer to get into the building. This deprived Plaintiff of essential medical care.

34. On several occasions, the delivery companies for Plaintiff's medical supplies left without delivering anything because Plaintiff was unable to open the door for them. When

Plaintiff is deprived of essential medical supplies, her health is at risk.

Plaintiff's Request for a Parking Gate Fob

35. The Acts Cyrene Apartments is located on International Boulevard, an urban corridor and busy street. The curb directly in front of the building is painted red. There are very few legal parking spaces close enough for Plaintiff to maneuver safely in her wheelchair.

36. In order to drop off Plaintiff safely, her care workers and family often have to risk parking in the red zone. On one occasion after dropping Plaintiff off with her groceries, Plaintiff's daughter was blocked in by a fire truck for nearly an hour.

37. The back of the building has a gated parking lot with approximately 55 parking spaces. There is an exit door from the back of the building that leads directly into this parking lot.

38. In June 2024, Plaintiff requested a fob to open the gate to this exterior parking lot so her caregivers could drive closer to the building to safely pick her up and drop her off. Defendants charged Plaintiff $50 for this fob, which she paid. Despite this charge, Plaintiff has never received this fob, even after requesting several times that Defendants provide it.

39. Management has told Plaintiff that she cannot have the fob until the intercom is repaired, but they have not repaired the intercom.

40. Plaintiff's requests are necessary to afford her an equal opportunity to use and enjoy her dwelling.

41. Defendants' behavior is ongoing. They continue to deny Plaintiff equal access to her housing by their refusal to grant very basic reasonable accommodation requests that Plaintiff has been lodging for months.

**INJURIES**

42. As a result of Defendants' discriminatory conduct, Plaintiff has suffered physical pain and discomfort and emotional distress, including frustration, embarrassment, mental anguish, violation of her civil rights and loss of dignity.

43. In doing the acts of which Plaintiff complains, Defendants acted intentionally and with oppression, malice, and conscious or reckless disregard of Plaintiff's fair housing rights.

44. Plaintiff was harmed and continues to be harmed by the denial of these reasonable accommodation requests in that she remains in fear that the elevator will go out again, trapping her in her unit. Her caregiving plan is always at risk because she is unable to provide remote entry to the building for her medical team, care workers and medical supply deliveries, and they must therefore rely on other tenants or staff letting them in, which is unpredictable. Further, her caregivers are unable to safely park close to the property to pick up or drop off Plaintiff. This causes Ms. Richardson stress and interferes with her efforts to live an independent life and have full and equal use of her home.

45. For almost a year, Defendants have exhibited a pattern and practice of failing to repair the elevator timely and ignoring Plaintiff's reasonable accommodation requests. Unless enjoined, Defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury unless relief is provided by the Court. Accordingly, Plaintiff is entitled to injunctive relief.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE FAIR HOUSING ACT**
**[42 U.S.C. § 3601 et seq.]**

46. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

47. The Acts Cyrene Apartments is a "covered multifamily dwelling" having four or more units with one or more elevators.

48. As a provider of multifamily housing, Defendants are each required to grant requests for changes in rules, policies, practices, or services when it may be necessary to afford a handicapped person equal opportunity to use and enjoy the dwelling.

49. Plaintiff Twinette Richardson is a person with a "handicap" as defined by the Fair Housing Act ("FHA").

50. Defendants have violated the protections afforded to Plaintiff under the FHA by discriminating against her on the basis of disability in:

     a. Failing and refusing to grant Plaintiff's requests for reasonable accommodations in policies, programs and procedures necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, i.e., her requests for speedy repair of the elevator, relocation to a downstairs unit, repair of the intercom, and a key fob to open the rear parking lot gate;

     b. Failing and refusing to provide an accessible path to and through the property by refusing, for an extended period of time, to make necessary repairs to the elevator which forms a necessary component to that accessible path;

     c. Failing to prioritize repair and maintenance activities on the elevator, failing to provide proper advance notice of planned elevator outages, and failing to secure accessible alternative accommodations for mobility-impaired tenants during planned and unexpected elevator outages; and

     d. Failing and refusing to make the subject property readily accessible and useable by disabled persons, including failing to maintain accessible paths of travel through the property.

51. Plaintiff has been injured by Defendants' conduct and is an aggrieved person.

WHEREFORE, Plaintiff requests relief as outlined below.

## SECOND CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT,
### [29 U.S.C. § 794]

52. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

53. Defendants are recipients of federal funding in connection with their ownership, management and operation of Acts Cyrene Apartments.

54. Plaintiff is a qualified individual with a disability and is qualified to participate in and receive benefits of the federal Project-Based Section 8 rental housing subsidy program through which the subject property is subsidized.

56. Defendants violated Section 504 of the Rehabilitation Act by refusing to provide

reasonable accommodations for Plaintiff's disability and/or otherwise failing to operate the subject property in a manner that is readily accessible to and useable by Plaintiff as a qualified individual with disabilities. Specifically, Defendants have discriminated against Plaintiff on the basis of disability by:

    a. Failing and refusing to grant Plaintiff's requests for reasonable accommodations in policies, programs and procedures necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, i.e., her requests for speedy repair of the elevator, relocation to a downstairs unit, repair of the intercom, and a key fob to open the rear parking lot gate;

    b. Failing and refusing to provide an accessible path to and through the property by refusing, for an extended period of time, to make necessary repairs to the elevator which forms a necessary component to that accessible path.

    c. Failing to prioritize repair and maintenance activities on the elevator, failing to provide proper advance notice of planned elevator outages, and failing to secure accessible alternative accommodations for mobility-impaired tenants during planned and unexpected elevator outages; and

    d. Failing and refusing to make the subject property readily accessible and useable by disabled persons, including failing to maintain accessible paths of travel through the property.

57. Plaintiff has been injured by Defendants' conduct and is an aggrieved person.

WHEREFORE, Plaintiff requests relief as outlined below.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
**[Cal. Gov't Code § 12955 *et seq.*]**

58. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

59. The subject property is a multifamily complex consisting of at least three rental apartment dwelling units and one elevator and is thus a "covered multifamily dwelling unit" as

defined in Cal. Gov't Code § 12955.1.1.

60. The Acts Cyrene Apartments is a housing accommodation within the definition of Cal. Gov't Code § 12927 in that it is a building, structure, or portion thereof that is occupied as, or intended for occupancy as, a residence by one or more families.

61. Plaintiff Twinette Richardson is a person with a disability as defined by the Fair Employment and Housing Act ("FEHA").

62. Defendants have violated the protections afforded to Ms. Richardson under FEHA by discriminating against her on the basis of her disability. Specifically, Defendants have discriminated against Plaintiff on the basis of disability by:

    a. Failing and refusing to grant Plaintiff's requests for reasonable accommodations in policies, programs and procedures necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, i.e., her requests for speedy repair of the elevator, relocation to a downstairs unit, repair of the intercom, and a key fob to open the rear parking lot gate;

    b. Failing and refusing to provide an accessible path to and through the property by refusing, for an extended period of time, to make necessary repairs to the elevator which forms a necessary component to that accessible path;

    c. Failing to prioritize repair and maintenance activities on the elevator, failing to provide proper advance notice of planned elevator outages, and failing to secure accessible alternative accommodations for mobility-impaired tenants during planned and unexpected elevator outages; and

    d. Failing and refusing to make the subject property readily accessible and useable by disabled persons, including failing to maintain accessible paths of travel through the subject property.

63. Plaintiff has been injured by Defendants' conduct and is an aggrieved person.

WHEREFORE, Plaintiff requests relief as outlined below.

///

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT**
**[Cal. Civil Code § 51 et seq.]**

64. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

65. Defendants, and each of them, are a business establishment within the meaning of the Unruh Act in that they own and operate a housing accommodation that provides goods, services and facilities in exchange for money.

66. Plaintiff Twinette Richardson is a person with a disability within the meaning of the Unruh Act.

67. Defendants have violated the protections afforded to Ms. Richardson under Unruh by denying her full and equal accommodations, advantages, facilities, privileges, or services in her rental accommodations. Specifically, Defendants have discriminated against Plaintiff on the basis of disability by:

   a. Failing and refusing to grant Plaintiff's requests for reasonable accommodations in policies, programs and procedures necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, i.e., her requests for speedy repair of the elevator, relocation to a downstairs unit, repair of the intercom, and a key fob to open the rear parking lot gate;

   b. Failing and refusing to provide an accessible path to and through the property by refusing, for an extended period of time, to make necessary repairs to the elevator which forms a necessary component to that accessible path;

   c. Failing to prioritize repair and maintenance activities on the elevator, failing to provide proper advance notice of planned elevator outages, and failing to secure accessible alternative accommodations for mobility-impaired tenants during planned and unexpected elevator outages; and

   d. Failing and refusing to make the property readily accessible and useable by disabled persons, including failing to maintain accessible paths of travel through the property.

68. The denial of full and equal enjoyment of Plaintiff's home complained of herein because of Defendants' refusal to grant very basic reasonable accommodation requests are patent barriers to Plaintiff and are of an obvious and intuitive nature such that failing to grant the requests demonstrates intentional discrimination. Defendants are familiar with the requirements of fair housing laws. Defendants intentionally refused to grant the reasonable accommodations in the face of Plaintiff's direct, timely, written and repeated requests to provide access to her and her care staff, and by taking money from her for the fob without providing it, or making the repairs necessary for her to use it. Plaintiff's damages resulted from Defendants' intentional acts and omissions.

69. Plaintiff has been injured by Defendants' conduct and is an aggrieved person.

WHEREFORE, Plaintiff requests relief as outlined below.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**
**[Cal. Civil Code § 54 et seq.]**

70. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

71. The Acts Cyrene Apartments is a housing accommodation within the meaning of the Disabled Persons Act ("DPA").

72. Plaintiff is a person with a disability within the meaning of the DPA.

73. The DPA states in relevant part, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

74. Defendants have violated the protections afforded to Ms. Richardson under the DPA by denying her full and equal access to her housing accommodations. Specifically, Defendants have discriminated against Plaintiff on the basis of disability by:

   a. Failing and refusing to grant Plaintiff's requests for reasonable accommodations

in policies, programs and procedures necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling, i.e., her requests for speedy repair of the elevator, relocation to a downstairs unit, repair of the intercom, and a key fob to open the rear parking lot gate;

b. Failing and refusing to provide an accessible path to and through the property by refusing, for an extended period of time, to make necessary repairs to the elevator which forms a necessary component to that accessible path;

c. Failing to prioritize repair and maintenance activities on the elevator, failing to provide proper advance notice of planned elevator outages, and failing to secure accessible alternative accommodations for mobility-impaired tenants during planned and unexpected elevator outages; and

d. Failing and refusing to make the subject property readily accessible and useable by disabled persons, including failing to maintain accessible features and paths of travel through the property.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE OAKLAND ELEVATOR REPAIR ORDINANCE

75. The Acts Cyrene Apartments contains three or more residential units and an elevator, and is therefore subject to the Oakland Code of Ordinances Chapter 8.72.

76. Defendants are each a "building operator" within the meaning of sections 8.72.030 and .040, in that Defendants are each an owner or lessor of the entirety of the Act Cyrene Apartments, and/or "an agent thereof with the responsibility of managing such building."

77. Defendants have each violated the Oakland Code of Ordinances by failing to ensure that the Acts Cyrene elevator remains accessible, usable, and in good working order at all times the building is occupied.

78. In addition, Defendants have:
a. On information and belief based on Cal-OSHA records, failed to establish a program of regular elevator maintenance to ensure that elevators in their buildings remain usable and accessible at all times the building is occupied;

b. Failed to ensure any maintenance or servicing of elevators is completed within the shortest practicable time period;

c. Failed to provide notice of repairs, and notice of the right to alternative housing during extended repairs, within the meaning of sections 8.72.060 and 8.72.070;

d. Violated their duty to complete repairs expeditiously, not to exceed twenty-four (24) hours of notice to the building operator of the malfunction or need for repair;

e. Failed to provide alternative housing at Defendants' expense to tenants whose access to their unit is substantially restricted because of the resident's physical disability, medical condition, illness, health impairment, or other similar circumstance, during times when the elevator cannot be repaired within twenty-four (24) hours.

79. As a result of Defendants' noncompliance with the Ordinance, Plaintiff's access to and egress from her home has been substantially restricted.

WHEREFORE, Plaintiff requests relief as outlined below.

**SEVENTH CAUSE OF ACTION**
**TORTIOUS BREACH OF THE WARRANTY OF HABITABILITY**

55. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

56. A warranty of habitability is implied in every residential lease. *Green v. Superior Court*, 10 Cal. 3d 616, 619-20 (1974) (en banc). The elements of an affirmative claim for tortious breach of the warranty of habitability are: 1) [T]he existence of a material defective condition affecting the premises' habitability, 2) notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, the landlord was given a reasonable time to correct the deficiency, and 3) resulting damages. *Ghazaryan v. Shabazian*, No. LACV1708245JAKSSX, 2018 WL 6190347, at *5 (C.D. Cal. Aug. 2, 2018), citing *Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1297 (2014).

57. A broken elevator and inoperable intercom are material defective conditions that impair Plaintiff's safe habitation. Defendants are on actual notice that the elevator in her building

has been inoperable or not functioning properly for months. Further, they are aware that Plaintiff relies on the intercom to provide remote entry to her care team and for essential health supplies, something she has not been able to do for nearly a year.

**RELIEF**

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

1. Under the First through Fourth and Sixth Causes of Action, for an order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To grant Plaintiff's reasonable accommodation requests;

   c. To implement a program of elevator maintenance and repair in compliance with federal, state and local requirements;

   d. To provide notice to Plaintiff of maintenance, repair, and her right to relocation during prolonged outages;

   e. To train Defendants' employees and agents on how to accommodate the rights and needs of persons with disabilities;

   f. To implement nondiscriminatory protocols, policies, and practices for accommodating persons with disabilities.

2. Plaintiff does not seek injunctive relief under Cal. Civ. Code § 55.

3. That the Court retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, as complained of herein no longer occur, and cannot recur;

4. Award to Plaintiff all appropriate damages, statutory damages, general damages, treble damages and punitive damages, all according to proof;

5. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal, state, and local law;

6. Grant such other and further relief as this Court may deem just and proper.

Dated: April 11, 2025      McGUINNESS LAW GROUP, PC

               */s/ Celia McGuinness*
              By: Celia McGuinness
                Attorneys for Plaintiff

**DEMAND FOR JURY**

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: April 11, 2025      McGUINNESS LAW GROUP, PC

               */s/ Celia McGuinness*
              By: Celia McGuinness
                Attorneys for Plaintiff